Garland, J.
delivered the opinion of the court.
In August, 1836, Robert J. Walker, of Mississippi, sold to the defendant a large property in land and slaves, situated in the parish of Terrebonne, and to secure the payment of the price took from him ten notes, amounting to $190,000, falling due at different periods, among which was one for $17,500, drawn to order, payable March 1st, 1839, at the Union Bank of Louisiana. In April, 1837, the plaintiff having made advances to and come under acceptances for Walker to a large amount, received from him as collateral security, notes amounting to upwards of $67,000, and among them the note just mentioned, indorsed in blank. In the agreement entered into between Walker and the plaintiff, it is stipulated the notes are left with the latter as security to him for specified notes and acceptances, and further, that Lapice may hold or negotiate them towards taking up his liabilities for Walker. Lapice kept the note in his possession until it became due, when his agent had it protested for non-payment; a demand being made at the bank where the note was payable, the defendant not being present. It is not shown that Walker had [155] notice of this protest, to hold him liable as indorser, or that defendant, was notified of the transfer until after the note was due. On the 26th of April, 1839, Lapice and Walker had a settlement of their accounts, and the balance against the latter was $50,081 31, for which ho gave his note, payable one day after date, with interest, and at the foot of the account it is stipulated, “ that to secure the payment of the above note, said P. M. Lapice holds, as collateral security, certain notes described in an agreement between Mm and R. J. Walker, dated April 26th, 1837, made by duplicate, and a certain receipt of Howell & Johnson for sixteen notes, amounting to $31,939 93, dated April 6th, 1839, and no suit is to be brought on said note of said Walker of this date till after the expiration of eighteen months from this date.” This agreement is signed by Lapice alone, but attached to it with a wafer is a paper of the same date, signed by Walker, which says, “if after the payment of my above note of $50,081 31, there should remain any balance in my favor from the collateral paper of mine, now held by Peter M. Lapice, said Lapice may appropriate said balance towards an acceptance of his on my account, now held by Mr. Thomas Henderson, for the Bank of the United States.”
*97 On the 7th May, 1889, eleven days after the transaction with Lapice, Walker gave the following receipt or instrument in writing:
“The note of L. K. Olifton to me for $17,500, due lst-itli, March, 1839, is to be obtained and delivered by me to L. K. Olifton, on my return to bTatchez, the same being discharged as per settlement of this date. — Jackson, Mississippi, May 7th, 1839.”
(Signed) “R. J. WALKER.”
The agent of the defendant, who made the settlement, says that the receipt was given in discharge of the note falling due 1st March, 1839. The items of payment for which the receipt was given were claims to the amount of about $12,000, assumed by Walker, in the sale from him to Olifton, [156] which the latter was compelled to pay, as Walker had failed to do so. The balance was paid by a draft and in cash.
Lapice refused to give up the note to either Walker or the defendant, and instituted this suit on it. The defendant presents various defences; there are several bills of exceptions in the record, and a mass of testimony in relation to the transactions of Walker and defendant, and of the former with the plaintiff. But the whole matter resolves itself into the question whether'Lapice has such a property in the note as will prevent Walker’s discharge of it from taking effect, and preclude the equitable defences of the defendant.
The note was indorsed before maturity, and put into plaintiff’s hands to indemnify him against certain liabilities, after the note became due ; Walker and the plaintiff had a settlement in relation to these matters, and some others, when the transaction assumed the character of a debt from Walker to Lapice, and it was then agreed that the note in controversy, then due and protested for non-payment, should stand as collateral security for that debt, which was not to be sued for until the expiration of eighteen months. 'The pledge or deposit of the note made in April, 1837, was annulled, and a new contract entered into two years after. The note was then the property of Walker, as Lapice acknowledged, by receiving from him a new deposit of it, as collateral security for a new debt, and being due, it was subject to all the equitable offsets the defendant had against it in the hands of Walker, or that he might have obtained, until he had notice of the transfer. That notice, it does not appear was given at any time previous to the discharge.
The counsel for the plaintiff says the defendant had notice of the transfer, as Walker, in his letter of the 20th of July, 1839, to him, says, “ a reference to my previous letters will show that I apprised you this note was in the hands of Lapice, for I requested you to make him a payment,on account [157] of it.” The whole of this letter is objected to as evidence by the plaintiff; and if any part of it is to be used by him, he must take all, and in another part of it he will find Walker says, “ the note, though in Mr. Lapice’s possession, wa3 never transferred to him,” which would be decisive of the question, if the letter is to be considered as evidence. But Walker’s expression of having informed the defendant is so vague that we cannot take it as a notice of transfer before the maturity of the note.
In the new agreement entered into in 1839, no special authority is vested, in Lapice to negotiate the notes in his hands as was given him by that *98 made in. 1837, and it is fair to presume, from the omission of so important a clause, that there was some change of intention between the parties.
The indorsement and delivery of a promissory note, -as a general rule, transfers the property, but the rule is subject to many exceptions, and we cannot admit every deposit and indorsement of notes as collateral security, as tranferring such an absolute property in them, as to deprive the payee or depositor of all right and the maker of every defence he may have against them, previous to notice of the deposit or pledge. 2 La. Rep. 361, 386. In the case of Perry v. Gerbeau and Wife, 5 Martin, N. S. 16, it was held that the fact of a bill or note being payable to and indorsed by a particular person is in many instances only prima facie evidence of a legal interest. In West v. Wilson, 4 La. Rep. 220, it was decided the indorsee of a draft, though only agent, may maintain an action in his own name; but it will be liable to the equities of defendant against the real owner. See also 4 Id. 533.
In the case of Maurin v. Chambers et al. decided in the western district [158] in October last, and reported in 16 La. Rep. 207, it was held the transfer of a note before maturity, under circumstances calculated to excite a reasonable suspicion in the mind of the indorsee of legal or equitable defences on the part of the maker, would not preclude evidence of such equities or defences in an action instituted by the indorsee against the maker.
To preclude the legal or equitable defences of the maker the note must be transferred in good faith, in the ordinary course of business, before maturity, and without any circumstances to induce a reasonable belief of the existence of such equities or defences.
Upon a full examination of this case, we think Walker had such legal interest in the note sued on, as authorized him to give a discharge, which being established judgment must be given in favor of the defendant.
The judgment of the district court is, therefore, affirmed, with costs.