ERNEST HEBERT et al. *v.* A. J. DOUSSAN et al.

The purchaser of property, under a probate sale, who assumes the payment of a mortgage resting upon the property, cannot urge that the sale cancelled the mortgage ; nor are such purchasers third possessors, in the sense which would require the holder of the mortgage claim to pursue his rights under the hypothecary form of action.

APPEAL from the Sixth District Court, Parish of West Baton Rouge. *Burk,* J. *Lacey,* for plaintiffs. *Brunot,* for defendants and appellants.

DUNBAR, J. *Amaranthe Landry,* widow of *J. B. Hébert,* sold on the 29th January, 1842, to *I. F. and E. P. Woods,* a small plantation, and thirteen slaves, situated on the Mississippi river, for the sum of $28,000, payable as follows : $7000 in a note at short date, $3960, divided into three notes of $1000, $1960 and $1000, payable at one year thereafter to her order, and $17,040, the balance, in an assumpsit of that sum, due by the vendor to her minor children, whose tutrix she was, payable as they should respectively become of age. All the instalments to bear an annual interest of ten per cent. ; the amount retained for the minors being subject to the same interest, payable annually. For the security of all these payments a vendor's lien and special mortgage was retained.

*Adolphe Hébert* having, in the course of business, become the owner of one of the above notes for $1000, instituted suit thereon against the makers, and

recovered a judgment against the representatives of their estates, with a full recognition of the vender's lien and special mortgage given to secure the faithful payment of it. This judgment was obtained on the 30th June, 1847, and was subsequently affirmed by this Court, in March, 1848. See 3d Annual, p. 254.

*Isham F. Woods*, one of the original purchasers, having died, his half of the estate was purchased at probate sale by *E. P. Woods*, the owner of the remaining half, who assumed to pay the one-half of the debt of $17,040, due to the heirs of *Hébert*, and for which the whole estate remained mortgaged. *E. P. Woods* dying some time afterwards, the estate was again offered at probate sale, and on the 9th of February, 1848, adjudicated at public auction to the present plaintiffs, for $23,230. A deed thereof in due form was, on the 8th January, 1849, executed in their favor by *F. A. Woods*, the executor of the deceased, which states that the purchasers retained in their hands, and assumed to pay the sum of $20,965 74, being the estimated amount due on the mortgage originally given in favor of the widow and heirs of *Hébert*, including the interest and *costs*; for the balance the purchasers executed their obligations in favor of the executor, at one and two years.

*Doussan*, the present defendant, was at this time the holder and owner, by notarial act of transfer, of the judgment obtained by *Adolphe Hébert* against the estate of *Woods*, which, as we have seen, was not only personal against the estate, but executory against the mortgaged property. On an execution issued under that judgment, the defendant was about to seize the mortgaged premises in the possession of the plaintiffs, when he was restrained by an injunction, the origin of the present suit. The cause was twice submitted to a jury, who, upon each trial, rendered a verdict in favor of the plaintiffs. The defendant has appealed. The grounds assumed by the plaintiffs in injunction, are as follows :

1st. That the mortgage and vendor's lien, originally retained by the widow and heirs of *Hébert*, were both extinguished by the probate sales of the property made after the death of *I. F.* and *E. P. Woods*, and that the present defendant must look not to the property, but to the representative of their estates, for payment.

2d. That if the mortgage still rests upon the property, the plaintiffs are third possessors, and as such entitled to the delays accorded by law, and are only suable in the hypothecary form of action.

3d. That *Doussan*, being but the transferee of a judgment, had no right to an execution in his own name thereon without an order of Court, or without being made a party to the record, and

4th. That they are apprehensive of eviction, and have a right to demand security.

The first and second grounds we shall consider together.

It is much to be regretted that notaries and others to whom, most frequently, the duty is entrusted of framing the conventions entered into by parties not acquainted with the technicalities and exactness required in legal documents, should so often draw up their deeds without due preparation. Obscurities and doubts are found where all might have been rendered accurate and clear, after forcing the parties to either a loss by compromise, or one still greater, by expensive and protracted litigation. These remarks are drawn from us by an examination of the terms of sale, as stated in the deed, from *F. A. Woods*, executor, to the plaintiffs. Its language is as follows : "For the price of $23,230, paid and to be paid in the manner following, to wit: by mortgage for vendor's privilege

resting on the property at the time of sale in favor of widow and heirs of *Jean B. Hébert*, amounting to the sum of $20,965 74, including interest and costs," &c. That mortgage was originally reserved to secure the payment of no less than five different obligations, four of them negotiable, and all varying in amount. Which of them were included in the above estimate of $20,965 74, the deed does not explain, nor how that amount was arrived at.

In the petition for injunction the plaintiffs do not deny that the defendant's judgment was included in the sum retained by them, and on the second trial opposed the introduction of the notary and vendor as witnesses to establish that it was. If the judgment was included, then so far from the mortgage being extinguished by the probate sale, we shall find that it is specifically retained, and if the purchasers, the present plaintiffs, assumed to pay it as a part of their purchase money, retained by them, for that purpose, in their hands, then the plea of being *third parties* comes with a bad grace. See *Woodward* v. *Dashiell*, 15 La. R., 184. Happily, the plaintiffs have answered the question, and solved the doubt. In an affidavit for continuance, filed by them, and sworn to by *Ernest Hébert*, one of the plaintiffs, we find the following admission : " That in consideration of said purchase, this deponent and his co-plaintiffs agreed to assume, and did assume, to pay the amount due and unpaid on the sale to *I. F.* and *E. P. Woods*, as set forth, &c., *including the notes of one thousand dollars* above mentioned; and this deponent further saith, that by reason of the fore-going, *the notes of one thousand dollars formed a part of the price agreed to be paid*, subject, however, to be made out of deponent, if not paid in due course of legal proceedings, and furthermore subject to such equities as the law may create in the premises." The provisos are not to be found in the deed of sale, and if they were, the plaintiffs have not brought themselves within them. It is, therefore, established beyond doubt, that the probate sale of the property of *Woods* did not purge it from the mortgage in favor of the widow and heirs of *Hébert*, of which the present defendant has the benefit, but re-affirmed it, and that by their assumption of the debt, the plaintiffs are not third parties.

The execution obtained by defendant, issued in the usual and customary form, directing that if the debt could not be made out of *Woods*, the Sheriff should seize the mortgaged premises, and on making the money should pay it over to *Doussan*. In this we see nothing illegal or irregular. *Doussan* was the holder of the judgment by notarial act, of which we presume the Clerk had cognizance, and in directing that the proceeds should be paid over to the true owner of the debt, we are at a loss to know of what the plaintiffs have to complain.

As regards the plea of apprehension of eviction, no evidence has been offered to substantiate it, and it is only where one has "*just reason* to fear that he will be disquieted," that the law accords to the purchaser the right of requiring security. See C. C., Art. 2535. Nor are we to be understood by any means as admitting that even had the plaintiffs established "*just grounds*" for apprehension of eviction, they could have acquired security from *Doussan*, who was not the seller of the property, and neither was his transferrer, *Adolphe Hébert*. The latter came into possession of a negotiable note, in the ordinary course of trade, as we are bound to presume from the record ; obtained a judgment upon it, with a recognition of the mortgage given to secure its payment; and should it now happen that the consideration for which it was given has failed in whole or in part, the plea cannot be raised against him. We consider *Doussan* as holding the same right as *Adolphe Hébert*, and no more. But the plaintiffs

themselves seem finally to have abandoned their apprehensions. On the first trial, at the fall term in 1851, they voluntarily abandoned this ground of attack, upon the plea that they were ruled into trial without having the necessary surveys returned; but shortly afterwards the survey was returned into Court, and upon the second trial had in March, 1852, three years from the time the injunction was first obtained, they seem to have made no effort to have the matter tested. We must conclude that they had no just reason to fear that they would be disquieted.

It is, therefore, ordered, adjudged and decreed, that the judgment of the lower Court be annulled, avoided and reversed, and proceeding to give such judgment as should have been rendered, it is ordered that the injunction obtained in this case be dissolved, and that the defendant, *A. J. Doussan*, recover from the plaintiffs and their sureties, upon the injunction bond, in *solido*, the sum of two hundred and fifty dollars, as special damages; that the Sheriff proceed with the execution of the writ enjoined; and that plaintiffs pay costs in both Courts..