### No. 2259
### Second Circuit Appeal

## BANK OF EUDORA v. A. EDGAR CROWE

(May 9, 1925, Opinion and Decree.)

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Bills and Notes—Par. 127, 130.**
Under the Negotiable Instrument Law, Act 64 of 1904, Sections 52 and 57, the holder of a note in due course holds the instrument free from any defect from prior parties and free from defenses of prior parties among themselves and may enforce payment. Therefore a holder in due course, who had purchased the note before maturity in good faith and for a valuable consideration can recover from the maker regardless of the failure of consideration which had not been transmitted to the holder.

2. **Louisiana Digest—Bills and Notes—Par. 218, 220.**
Under the Negotiable Instrument Law, Act No. 64 of 1904, Section 59, every holder is deemed prima facie to be a holder in due course. Therefore, where the record contains no proof that the plaintiff, holder of a note purchased before maturity knew or had reason to believe that the consideration was defective or lacking, he can recover from the maker.

3. **Louisiana Digest—Bills and Notes—Par. 77, 127.**
The fact that the notes were paraphed by a notary to identify them with the act of sale which act showed the consideration or lack thereof of the notes, did not affect the rights of a holder of one of the notes of the series purchased before maturity in good faith.

4. **Louisiana Digest—Bills and Notes—Par. 127.**
There is no statute law in Louisiana making all notes of a series due on failure to pay one of them. Therefore the purchaser in good faith of one of a series of notes before maturity, although a prior note of the same series was due and unpaid, will be considered a holder in due course and can recover from the maker regardless of the failure of consideration.

5. **Louisiana Digest—Bills and Notes—Par. 127, 130.**
Where the danger of eviction from the land the purchase of which constituted the consideration of the notes in question had not been made known to the plaintiff at the time he acquired the notes before maturity in good faith and for value, he will be considered a holder in due course and therefore, can recover from the maker regardless of the failure of consideration.

6. **Louisiana Digest—Appeal—Par. 588.**
Where there is no motion in the record asking for an amendment of the judg-

ment a request of plaintiff's council in his brief cannot be considered.

Appeal from Seventh Judicial District Court of Louisiana, Parish of West Carroll, Hon. John R: McIntosh, Judge.

This is a suit in which the plaintiff seeks to recover the amount of three notes executed by the defendant payable to his own order and by him endorsed. There was judgment for plaintiff on two notes which plaintiff acquired before maturity and judgment for defendant on the note which plaintiff acquired after maturity. Defendant appealed.

Judgment affirmed.

D. J. Anders, of Oak Grove, attorney for plaintiff, appellee.

R. V. Reeves, of Oak Grove, attorney for defendant, appellant.

CARVER, J. Plaintiff sues to recover the amount of three notes executed by defendant on November 7, 1917, all payable to his own order and by him endorsed in blank, as follows:

One due December 1, 1920, for $164.89.
One due December 1. 1921, for $151.21, and
One due December 1, 1922, for $141.63; besides interest and attorney's fees on all three notes.

The notes were originally secured by mortgage on certain land, but by agreement between the plaintiff and defendant the mortgage was released in order to enable defendant to obtain a loan from the Federal Land Bank and the sum was deposited in the Bank of Oak Grove to the credit of the Clerk of Court to respond to the judgment.

The defense is, failure of consideration. This defense was sustained as to the note due December 1, 1920, which plaintiff acquired after maturity; but judgment went against defendant on the other two, which plaintiff acquired before maturity.

Defendant appealed; and plaintiff's counsel, in his brief, asks that the judgment of the lower court be amended by giving it judgment for all three notes.

We do not find in the record, though, any motion asking such amendment, nor do we find in the minutes any notation of such motion; so the request cannot be considered.

See Morris vs. Cain, 39 La. Ann. 712, 1 South. 797, 2 South. 418, and cases therein cited.

On May 26, 1917, defendant bought from one R. J. Walker a certain tract of land for $9036.00, wholly on credit, giving his notes for the price, as follows:

One for $486.00, due December 1, 1917.
One for $686.00, due December 1, 1918.
One for $768.00, due December 1, 1919.
One for $841.00, due December 1, 1920.
One for $905.00, due December 1, 1921.
One for $860.00, due December 1, 1922.
One for $815.00, due December 1, 1923.
One for $770.00, due December 1, 1924.
One for $725.00, due December 1, 1925, and
One for $2180.00, due December 1, 1926.

On November 7, 1917, defendant sold to Charles Little a part of the land for something less than the amount of the notes given to Walker, all of which, though, Little assumed in the deed. The difference between the purchase price which Little was to pay and the amount of the notes held by Walker was adjusted by defendant agreeing to pay part of the debt due by Walker, as follows:

On the note due December 1, 1918, $188.26.
On the note due December 1. 1919, $176.57.
On the note due December 1, 1920, $164.89.
On the note due December 1, 1921, $153.21, and
On the note due December 1, 1922, $154.63.

Instead of merely providing that, as between defendant and Little, defendant should pay these amounts on the notes held by Walker, notes for said amounts, due at said times, were executed by defendant, payable to his own order, endorsed by him in blank and secured by mortgage on certain property, which notes were by the Notary paraphed to indentify them with the act and were then delivered to Little.

Little paid the notes held by Walker, maturing December 1, 1917, December 1, 1918, and December 1, 1919, and defendant paid his notes maturing in 1918 and 1919.

Little defaulted as to the note held by Walker, due December 1, 1920, and on December 31, 1920, pledged the three notes sued on to the plaintiff.

Little paid nothing more on the notes held by Walker who, in 1923, foreclosed on the seven remaining unpaid and had the property sold at sheriff's sale.

The price realized at the sale left an amount due by Little much larger than the amount of the notes sued on herein.

On the trial defendant offered parol testimony to show that by agreement with Little he was not to pay the notes given by him unless Little paid the notes held by Walker.

We deem it unnecessary to pass on this question because we think the act of sale itself shows that Little's assumpsit was the consideration not only for the land sold by defendant but also for the notes given by him to Little, to which plaintiff objected.

Little's failure to pay the note held by Walker due December 1, 1920, was in our opinion, a failure of the consideration which defendant could plead against him as a defense to the notes sued on herein; but as to the two unmatured notes, this equity could not, in our opinion, defeat a holder in due course.

The negotiable instrument law, Act No. 64 of 1904, provides, in section 57:

"A holder in due course holds the instrument free from any defect of title of prior parties, and free from defences available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon."

Defendant's counsel cites section 52, which provides:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"1. That it is complete and regular upon its face;

"2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"3. That he took it in good faith and for value;

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

He argues that inasmuch as the Notary's paraph identified these notes with the act of sale from defendant to Little, and that act showed that the consideration of the notes sued on was Little's assumpsit of the notes held by Walker, therefore plaintiff was charged with notice of the failure of consideration.

We do not think so.

True, that act did show that the assumpsit was the consideration of the notes sued on. True, too, Little failed to pay the note held by Walker due December 1, 1920. But the record contains no proof that plaintiff knew or had reason to believe that Little had not paid that note.

Section 59 of the negotiable instrument law provides:

"Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who

has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course. But the last mentioned rule does not apply in favor of a party who became ,bound on the instrument prior to the acquisition of such defective title."

Under this section the bank must be presumed prima facie to be a holder in due course, and

Section 56 provides:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

It was held in Abat vs. Gormley, 3 La. 238; and Chalaron vs. Vance, 7 La. 571, that the negotiability of a promissory note made in due form is not restrained or in any manner altered by the circumstance of its being paraphed "Ne Varietur" by a Notary Public.

If the circumstance, though, of the notes being paraphed, were sufficient to charge plaintiff with knowledge of the stipulations in the deed from Crowe to Little, this knowledge would go no further than informing him that the consideration of the notes sued on was Little's assumpsit of the notes held by Walker. It would not inform plaintiff of Little's failure to pay the Walker note due December 1, 1920.

8 Corpus Juris, page 748, verbo "Bills and Notes", section 1020, lays the rule down as follows:

"As against holders in due course neither want or failure of consideration is any defense in the absence of a statute to the contrary, and this is the rule under the negotiable instruments law."
"A fortiori a partial failure of consideration is not a defence against the holder in due course, and hence a breach of warranty is no defence."

Many cases are cited in support of the text, and amongst them three from Louisiana, namely:

Peoples Bank vs. Trudeau, 38 La. Ann. 898; Herbert vs. Doussan, 8 La. Ann. 267; Mallard vs. Aillet, 6 La. Ann. 92.

Defendant's counsel also cites "Ogden on Negotiable Instruments", page 156₅ as stating:

"Bills payable in installments are considered overdue in toto, when any installment is past due, but not from the fact that the interest is· past due."

This is, no doubt, a sound principle, but he refers to no authority holding it applicable to the unmatured notes of a series and it seems that it does not apply to them.

8 Corpus Juris, verbo "Bills and Notes", paragraph 606, page 410, gives the following rule:

"If an installment of a note is overdue at the time it is transferred, the purchaser takes the whole note as overdue paper and is not a bona fide holder; but if there are several notes, even though secured by one mortgage, the fact that one note is overdue does not render the others so nor make. them subject to defences in the hands of a purchaser, unless there is an express provision or a statute to such effect."

We know of no statute in Louisiana making all notes of a series due on failure to pay·one of them, and the act in question contains no provision to that effect.

Defendant's counsel also cites Lapice vs. Clifton, 17 La. 152, in support of the proposition that:

"A note must be transferred in good faith in the ordinary course of business before maturity and without any circumstances to induce a reasonable belief of the existence of such equities or defenses to preclude evidence of them by the maker."

That case, in our opinion, is not in point, because the court held that a pledge of

the notes in question, made before their maturity, had been annulled and that the plaintiff's rights must be measured by a new pledge made after their maturity.

In this case, though, the two notes due December 1, 1921, and 1922, were acquired by plaintiff before maturity, in the ordinary course of business, and presumably in good faith as there is no proof to the contrary, nor is any circumstance apparent which could have induced a reasonable belief of the existence of any equity. The only circumstances claimed to have that effect were the fact that the other note was overdue and that the paraph identified them with the sale from defendant to Little which sale showed that the three formed part of a series of notes the consideration for which and for the land sold was Little's assumpsit; but there is nothing in the record to show that plaintiff knew that Little had failed to meet the note due December 1, 1920, which he had assumed, and, as said above. mere knowledge of what the consideration was was not knowledge of the fact that the consideration had failed.

Defendant's counsel also cite Continental Bank and Trust Co. vs. Times, 142 La. 209, 76 South. 612. In that case the note sued on read as follows:

"150. Shreveport, La., March 24, 1913.

September 1st, 1915, after date I promise to pay to the order of myself one hundred and fifty dollars with 7 per cent per annum interest from maturity until paid at Commercial National Bank of Shreveport, La., rent for month of August, 1915, for part of brick building located on corner of Marshall street and Alley in Shreveport, La., as per contract dated March 24, 1913. Value received.

The Times Publishing Co., Ltd."

The court held that the concluding clause of the note had the effect of incorporating in it the contract of March 24, 1913, which was a lease contract wherein the Oliff Brick Company leased to the maker of the note part of a brick building for ten years; that in this contract must be regarded as written the provisions of articles 2693, 2694, and 1697 of the Civil Code respecting the obligations of a lessor to make needed repairs and in case of his default authorizing the lessee to make them at his expense, and, in case of destruction, terminating the lease; and that therefore the note was not an unconditional obligation to pay but a conditional one and hence not negotiable.

In this case, though, there is nothing in the notes sued on to destroy their negotiability.

He also cites Marcal vs. Melliet, 18 La. Ann. 223, which in our opinion, is without application because the court there found that the negotiation of the notes took place after its original maturity and that an extension agreement made by the parties did not restore full negotiability to the note which had become restricted as to negotiability by the failure of the maker to pay it at its original maturity.

In our opinion the case of Maurin vs. Chambers, 6 Rob. 62, is decisive of this case.

There the defendant made a note payable to the order of one Williams and stating on its face that the consideration was the purchase of a tract of land. When sued by an endorsee (though the endorsement was without recourse) defendant plead that he was being sued for the land and in danger of eviction and that plaintiff knew of the suit. The court said:

"It is true, that the note states on its face that the consideration of it was the purchase of a tract of land from G. & F. Cretien, who endorsed it to the plaintiff, without recourse. It is negotiable, being made payable to the order of the payee. There is no evidence of the knowledge of the plaintiff, when he received the note, that a suit was brought against the maker for the land. The consideration of a note being stated on its face to be the purchase

of a tract of land, imposes no obligation on the endorsee to inquire whether his endorser had a good title to the land; neither does this obligation result from the note being endorsed without recourse. The note being in the hands of an endorsee, the maker is disabled from urging an inquiry as to its consideration."

This case is cited approvingly in Sadler vs. White, 14 La. Ann. 178, in which the court uses the following language:

"Any one, having sufficient confidence in another to give his written obligation for something to be given or enjoyed hereafter, is at liberty to do so, and the maker cannot censure any future holder of the note for having purchassed it, and for seeking to hold him liable, for it was the faith of the maker in the payee that he would execute his promise and allow no obstacles to defeat it, that created the note and gave currency to it."

The case of Maurin vs. Chambers, 16 La. 207 had been before the Supreme Court previously. On the first trial the lower court had excluded evidence showing that the consideration of the note was a sale of land by Cretien and that a suit for eviction was pending. The ground given by the court for excluding the evidence was that it should not be received because defendant had not offered any proof that plaintiff knew of the danger of eviction.

The Supreme Court held this exclusion was erroneous, because the defendants had the right to introduce their proof in whatever order pleased them and when offering the excluded proof had stated that they intended afterwards to introduce evidence of plaintiff's knowledge of the threatened eviction. The case went back to the lower court and was tried again and appealed again and, as shown above, the Supreme Court on the second hearing gave plaintiff judgment, not because of failure to prove danger of eviction from the land the purchase of which constituted the consideration of the notes but because knowledge of this danger had not been brought home to plaintiff at the time he acquired the notes.

For these reasons the judgment of the lower court is affirmed.